KAUFMAN *v.* EHRLICH, guardian, *et al.*

The paper attached as an exhibit to the plaintiff's petition was, as to the specific lands therein mentioned, a deed, and not testamentary, and there was sufficient evidence to warrant the finding that said deed was duly delivered to the grantee in his lifetime. The evidence as a whole, though not pointing with absolute certainty to the conclusions reached by the presiding judge who tried the case without the intervention of a jury, authorized a general judgment in favor of the defendants, and there was no error in denying a new trial.

July 16, 1894.

Equitable petition. Before Judge FALLIGANT. Chatham superior court. December term, 1893.

David R. Dillon, the father of Mildred Dillon (a child of eight years), died in New York on October 9, 1883. He left a will which was probated, and an exemplification of which was filed in the court of ordinary of Chatham county, Ga. Ehrlich was executor of said will, and is the legal guardian of Mildred Dillon, whose mother (Virginia, a sister of Ehrlich) was married to Kaufman on January 25, 1888, and died intestate in New York on December 1, 1890, leaving as her only heirs at law her said husband and her daughter Mildred. She had made a will on March 5, 1886, devising all her property to her daughter Mildred; which will was set

aside by the New York courts as having been revoked
by her marriage to Kaufman. On September 6, 1876,
Dillon had conveyed to her certain lands in Savannah
and elsewhere in Chatham county; which deed recited
a consideration of $5, and was recorded on the day of
its execution. After her death Ehrlich produced a paper
(hereafter set out) signed by her, dated July 10, 1879,
in the form of a deed of conveyance to Dillon. It was
not backed nor recorded. Kaufman brought a petition
for its cancellation, alleging that it was not a deed but
testamentary in character, and as a will was revoked by
the subsequent marriage of Virginia; that it did not
describe the property with sufficient certainty to make it
valid as a deed; that it was not delivered nor intended
to be, but was ignored by the parties thereto; that no
possession was taken or claimed under it, and the actual
status of the property remained just as if the paper had
not been executed; that Dillon made no claim to the
property therein referred to, but always recognized the
continued possession and ownership of Virginia, and
under the facts the paper ought not to affect the rights
of Kaufman as one of her heirs. The case having been
submitted to the judge, he found, in addition to the
facts already stated, the following, which latter findings
were assigned by Kaufman as erroneous because con-
trary to law and evidence : Virginia was not seized and
possessed of all the property referred to in the deed of
September 6, 1876, did not pay the taxes thereon as her
property, and did not die seized and possessed thereof.
There appears no recognition by Dillon of her owner-
ship of property covered by said deed, after the execu-
tion of the paper of July 10, 1879. This paper was
delivered by her to Ehrlich as executor of Dillon, with
other deeds and muniments of title belonging to Dillon,
immediately after Dillon's death in New York. There
had been a legal delivery of the paper to Dillon. It is

a deed and not a testament; the property (reference being had to other deeds forming a part of the title) is described therein with sufficient certainty to make it valid as a deed; it was not ignored; and it conveyed to Dillon a life-estate in the property, with remainder over to Mildred Dillon, the minor.

The paper in question purports to have been executed in Chatham county, Ga. It recites a consideration of $10, and conveys to David R. Dillon "all parcels or tracts of land and premises hereinafter particularly described, situate, lying and being in the —— of ——— in the county of Chatham and State of Georgia, ——— lot number ten, bounded north by Anderson street, south by lot number nine, west by a continuation of Montgomery street, and east by a line 100 feet from Barnard street; also, those two tracts of land bounded south by Ogeechee cross-road, and north by land known as Kollock's land. Also, all other property real and personal I now own or may own, during his natural life, after his death to my child or children; and should I not have any children, all the rents and profits to then go to the support of my mother during her natural life, and not subject to any debt or debts of hers; and after her my mother's death, for my three sisters Hennie, Maime and Katie Ehrlich, during their natural lives, and to their children in fee simple; and I hereby appoint David R. Dillon guardian and trustee for my child or children; this is to include all property I may own, or now own, at the time of my death." It was "signed, sealed and delivered in the presence of" four persons, one of whom signed as a notary public of Chatham county.

The deed of September 6, 1876, from Dillon to Virginia, conveyed "all those tracts or parcels of land . . . in the county of Chatham, . . . that tract of land purchased by me from Bryan, Hartridge and Neff, situate in Chatham county about five and one half miles from

the city of Savannah, and recorded in book E, pages 116 and 120, bounded north by lands of Kollock, south by Ogeechee cross-road and east by White Bluff road; also, my interest in lot number ten, bounded north by Anderson street, west by a continuation of Montgomery street, and east by Barnard street less one hundred feet from Barnard street, south by ———— this being in dispute, the southern boundary." It appears that the dispute as to the southern boundary of lot number ten, just referred to, was settled on April 15, 1881, by the payment of $750 to John C. Rowland, and the execution of a deed from him to Virginia Ehrlich (the body of which deed is in the handwriting of Dillon), conveying the southern half of lot number ten, containing about two and a half acres, bounded north by the northern half of said lot number ten, east by a continuation of Barnard street, west by a continuation of Montgomery street, and south by lot number nine.

Plaintiff put in evidence also the following documents: Deed executed in New York in 1881, by Virginia Ehrlich (the body of it being in the handwriting of Dillon), reciting that in consideration of ten dollars paid by Rachel Dillon, the grantor releases and quitclaims to Rachel Dillon all the right, title and interest of the grantor in and to "those two tracts of land bounded north by lands of Kollock, south by Ogeechee cross-road; the tract purchased by me from Munnerlin, bounded on the west by the canal; and tract purchased from Mr. Dillon, bounded on the east by White Bluff road; about seventy acres in all, and known as Pear Orchard tracts; the said two tracts or parcels of land being for the benefit and use of said Rachel Dillon during her natural life, and at her death to revert back to me, Virginia Ehrlich; and said property not subject to any debts of the said Rachel Dillon." It was admitted that in 1885 this life-estate was reconveyed to the grantor. Also, the deed

of record referred to in the deed of September 6, 1876, describing the property fully and accurately, and showing that the number of acres of the property conveyed (outside of a street twenty feet wide which bounded the property) were twenty-eight and one half. Also, copy of a will dated August, 1884, purporting to have been made by Virginia Ehrlich, in which the property mentioned in the paper of July 10, 1879, as that bounded north by Anderson street, is specifically devised; and containing a residuary clause. Also, deed dated April 20, 1880, from David R. Dillon to Virginia Ehrlich, recorded four days later, reciting a consideration of ten dollars, conveying a tract of land purchased by the grantor from G. M. Willett, and containing the following: "The conditions of this sale are, that this property shall remain in and be the absolute property of David R. Dillon during his natural life, and should David R. Dillon at any time dispose of this strip or parcel of land, then this bill of sale to be null and void and of no effect whatever. Should said David R. Dillon not dispose of this strip or parcel of land during his natural life, then at his death this strip to be the property of said Virginia Ehrlich." Also, a deed from David R. Dillon to Virginia Ehrlich, dated June 16, 1883, and recorded at once, in which he conveys to her, for fifty dollars, certain real estate on Whitaker street in Savannah, "provided, however, that while this deed conveys a present estate unto the said party of the second part and to her heirs and assigns, in and to the foregoing property and the improvements and appurtenances, the said grantor, David R. Dillon, reserves to himself, for and during his natural life, the possession of the same, with the rents, issues, profits and income of the same, and the said party of the second part, her heirs and assigns, though vested with the title as aforesaid, shall not possess or control the said property or the rents, issues and profits

thereof so long as the said party of the first part shall be in life."

Kaufman testified: From the time of my marriage to the time of her death, I always understood that the property referred to in the paper of July 10th, 1879, was my wife's, that she claimed it; and I never heard anything to the contrary. I never knew anything of this paper until Ehrlich came to me in New York with Mr. Meldrim, February, 1891. I had heard my wife speak of a paper in Ehrlich's hands that she had requested, but I did not know what it was. She always received rents and paid taxes on the property through Ehrlich; he attended to it. The property on Montgomery and Anderson was improved, and there was income from that which she got. I had no knowledge previous to our marriage as to payment of taxes or as to rents.

Ehrlich testified: The paper of July 10th, 1879, I first heard of when I went to Dillon's funeral. The day after the funeral my sister handed me a bundle of papers and all the deeds, chains of title; and I brought them to Savannah. There were none of her deeds, just a bundle of his papers, letters, and so on. I can't say whether she knew that this paper was there or not. I had nothing to do with her affairs prior to Dillon's death; after his death I took charge. Before then Dillon had charge, and LaRoche was his agent here. There were no rents at that time that I know of. There were no improvements of the Anderson street property at that time. That was improved in 1886 or 1887. During the seven years my sister lived after I got this paper of July 10, 1879, the property referred to was all in her name. I paid taxes on it in her name from 1883, and you might say up to the present time. She got credit for the improvements. The farm property brought nothing. After the store was put up on Anderson street property, she got the rents for that. I know that

from the time the paper of September 6, 1876, was signed, up to the time of her death, my sister always looked upon and claimed all the property as hers. I did not think it the property of any one else. I never heard from Dillon that he had a life-estate in it. I fully understood it was her property, and did not know that this paper was in existence. If she ever knew of the existence of the paper, she never mentioned it to me. I never mentioned it to her, because I did not attach any importance to it. I suppose I must have become first intelligently aware of this paper the latter part of 1883 or early part of 1884. I paid no particular attention to it. She was alive and I put it back with the bundle of papers. I kept it. It first occurred to me immediately after her death that it was my duty to have it passed on. I took it to Mr. Meldrim, and he said the court ought to pass on it. That was the only paper I had at the time that was of any note. Previous to that time I did not attach enough importance to it either to record it or to call my sister's attention it. I continued to return the property as hers, just as if this paper was not in existence. I never heard Dillon refer to it in any way, and never heard of the paper until after his death. There was no occasion to record the paper; she was alive, and after her death I brought it to Mr. Meldrim. I found this paper along with other deeds, and after her death commenced to look into her affairs, and brought the paper to Mr. Meldrim, who advised that its character was such that in justice to the child it ought to be passed upon and determined. The property known as the Pear Orchard farm, July 10th, 1876, was worth about $2,000, and the Anderson street property was worth then about $10,000. The property on Whitaker street was worth about $7,000, and the Market Square property about $4,000. Mrs. Kaufman left a house in New York, but no personalty. Under the law of New

York, the child gets all the real estate and two thirds of the personalty. I am her administrator here (in Savannah), and have the property in charge as the property of her estate. I knew of the existence of this paper of July 10, 1879, before the child was born. The property bounded on the north by Anderson street consisted of four and three quarter acres, and the two pieces called the farm property of thirty-two and thirty-seven acres; therefore when seventy-five or seventy-six acres were mentioned as being in the name of Virginia Ehrlich, they must have included the property mentioned as lot ten, bounded north by Anderson street, and also the two tracts bounded north by Kollock's land and south by the Ogeechee cross-road.

Other evidence was to the effect, that Dillon, by his agent LaRoche, paid taxes and collected rents of the property in question, from 1879 to his death; and that up to 1881 the property was returned for taxation in his name, beginning with which year there were also returns in the name of Virginia Ehrlich, of 76½ acres, 14½ acres, 75 acres, her returns as to number of acres growing less in later years, and, beginning with 1884, including city property at $12,000, $14,000, $5,000, etc.

DENMARK & ADAMS, for plaintiff.

GARRARD, MELDRIM & NEWMAN, for defendants.

LUMPKIN, Justice.

The facts appear in the reporter's statement. By consent, the case was submitted to the presiding judge for determination without the intervention of a jury. The controlling legal question was, whether or not the instrument dated July 10th, 1879, and executed by Virginia Ehrlich, was a deed or a will. We are quite clear that, as to the specific lands therein mentioned, it was a deed, and was not testamentary in its character. As to so much of the instrument as undertook to convey prop-

erty which the grantor might acquire after its execution and of which she might be the owner at the time of her death, it may be testamentary; but this is immaterial, as no property is involved in the present controversy other than that with which this instrument deals specifically.

There was sufficient evidence to warrant the judge in finding that this deed was duly delivered to the grantee, David R. Dillon, in his lifetime. We have carefully read, studied and considered the evidence in this case. It contains many contradictions and inconsistencies, and leaves our minds in some doubt as to the real truth of many of the points in issue. As a whole, it presents a confused, rather than a clear and satisfactory, view of the various transactions to which it relates. We therefore felt justified in saying in the head-note that it does not point with absolute certainty to the conclusions reached by the presiding judge, and which were necessary to an adjudication by him in favor of the defendants. Still, we think he was authorized in so adjudging. It would be a most laborious task to discuss in detail the facts of this case. Nevertheless, we would cheerfully undertake the burden of so doing if any good could thereby be accomplished. As this, in our opinion, would not be the case, we leave the judgment to stand, without further comment.

*Judgment affirmed.*